Michael Floyd
1214 Mount Hermon Rd
Scotts Valley, CA 95066
mdf3039@gmail.com
(713)562-7229

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
## HALL OF JUSTICE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | FELONY COMPLAINT |
| | CASE NO: C2111237 |
| Plaintiffs, | NOTICE OF AMENDED RACIAL INJUSTICE |
| vs. | MOTION AND AMENDED RACIAL INJUSTICE |
| MICHAEL DEVIN FLOYD (09/08/1989) 1901 IOWA AV KENNER LA 70062, | MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| Defendant, | DATE: 02/24/2022 TIME:  8:30 AM PST DEPT: 034 |

\*\*\*\*\*

**The amendments to the motion are in Sections III and IV of this document. The amendments remove the prior issues of the first filed and heard Racial Injustice Motion.**

\*\*\*\*\*

TO THE DISTRICT ATTORNEY OF THE COUNTY OF SANTA CLARA:

TAKE NOTE that on February 24, 2022, defendant Michael Devin Floyd, through counsel, moves this Court for an order directing the State of California

to disclose information from all firearm arrests, charges, and convictions brought under all California Penal Code Sections that regulate firearms, like Sections § 25850 and § 25400. The defense requests all data from 1957 to 2021. The defense moves under Penal Codes § 1473.7, 745.a, and 745.d; the motion is further based upon the statutory grounds as well as state and federal constitutional grounds, including the Equal Protection Clause of the 14th Amendment of the United States along with its decided cases. The Equal Protection Clause prohibits discrimination based on criteria such as race and gender. All persons in the United States enjoy "equal protection of the laws."

The defense requests all data from 1957 to 2021. The information needed from the California firearm arrests, charges, and convictions includes, but is not limited to:

a. demographic data of each arrest, such as race, sex, age, occupation, prior convictions;
b. incident data of each arrest, such as location, other charges;
c. conviction and disposition data of each defendant, such as pleas and plea deals, acquittal or dismissal;
d. sentencing information of each defendant, such as fines, probation, length and location of imprisonment.

According to Penal Codes § 745.a and 745.d:

§745(a) The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin.

§745(d) A defendant may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state. A motion filed under this

section shall describe the type of records or information the defendant seeks. Upon a showing of good cause, the court shall order the records to be released.

According to Penal Codes § 1473.7:

§1473.7(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:

§1473.7(a)(3) A conviction or sentence was sought, obtained, or imposed on the basis of race, ethnicity, or national origin in violation of subdivision (a) of Section 745.

The defense further moves that as to all items requested, the information be furnished regardless of the outcome, disposition, or result of the complaint, report, or investigation.

This filing serves as an amendment to the first filed and heard Racial Injustice motion. In hopes to obtain acceptance of the motion, the issues that were brought forth in court in regards to the first Racial Injustice motion will be addressed before the conclusion of this document as the Amended Arguments.

The following arguments are asserted in support of the amendment to the motion:

MEMORANDUM OF POINTS

**I. Facts::**

On August 18th, 2021, the San Jose Police Department received a call from Hung Tran stating the defendant had a gun. He alerted the Police Department of the type of vehicle the defendant was driving along with a description of the defendant.

When police arrived at the parking lot, they saw a BMW matching that description. The defendant was driving the BMW. The police officers waited until the BMW left the parking lot and pulled over the defendant shortly after leaving the parking lot. The police officers requested the defendant to exit his car and walk towards the police cars. Once the defendant complied with these orders, the officers frisked the defendant for weapons and proceeded to interrogate the defendant. The officers admitted to receiving a call stating the claims in the aforementioned paragraph. The officers asked the defendant if he pointed a gun at someone. The defendant denied pointing a gun at anyone. The police officers asked the defendant if he had a gun. The defendant confirmed that there was a firearm in his vehicle. At this moment, one of the detaining officers made a move to retrieve the firearm from the defendant's vehicle. The defendant stated he did not give the officers permission to search his vehicle. Upon hearing this, the officers put the defendant in handcuffs and forced the defendant to sit on the ground. The defendant did not want to sit on the ground and complained about problems it could incur with his legs. The officers forced him to kneel on the ground. The officers stood in front of the defendant and continued to interrogate the defendant, asking him questions at their will.

After all questions were asked and answered, the questioning officers then asked their supervisor for his decision on how to proceed with the situation. Not known to the defendant, the supervisor of the questioning officers was directly behind the defendant while the interrogation was commencing. The supervisor told the questioning officers to proceed with a specifically-named search. When the defendant questioned the meaning of this search, the

supervisor stated that they were going to search the places in the vehicle from the driver's seat where the defendant could hold a potential threat to the officers. The officers searched this section of the vehicle. They found nothing. They then proceeded to open and search the trunk of the vehicle. While this was occurring, the defendant told the officers repeatedly they did not have permission to search his vehicle. The officers continued with the search. The officers opened the back seat doors and continued searching. The officers proceeded to search until they found the firearm, located on the floor at the passenger's back seat. The officers took the gun and proceeded to check if the firearm was registered, The defendant told them the gun was legally purchased in Louisiana. Once the firearm registration results came back, the officers reported to the defendant that the firearm was not registered. The officers proceeded to arrest the defendant, removing his belongings out of his pocket and putting him in a police car.

**II. Arguments::**

## Particular California firearm restrictions were established to undermine the rights of minorities.

In the 1960s, to combat police brutality events, various organizations began patrols of problematic neighborhoods. Some groups patrolled armed, some unarmed, some recording and documenting. For example, the Black Panther Party was infamous for their armed and video recorded patrols in Oakland and other cities. They filmed and documented police officers performing their duties, patrolling the patrollers to keep them accountable.

As a result of this unwanted "copwatching", California assemblyman Don Mulford of Oakland introduced a bill to disarm the copwatchers, particularly the Black Panther organization. This Assembly Bill 1591, also known as the Mulford Act, would be passed and signed into law in 1967. The bill became

California Penal Code §12031, which outlawed the open carrying of loaded firearms in the state.

## These firearm restrictions are carried into the current laws.

In 1996, as a response to the growing problem of gang-related crimes, sections were added to §12031 changing the punishment from a misdemeanor to a felony if you are involved in a criminal street gang. This addition to §12031 is a "gang enhancement" to a law already designed to restrict the freedom of minorities exercising their rights. Since gang enhancements to laws began in the 1980s, it has been predominantly minorities who have suffered harsher sentencing in cases where prosecutors can proclaim charges as gang-related. In 2019, 11,484 inmates in the California prison system had a gang enhancement attached to their conviction. 10,535 were either black or Latino - approximately 92%.

In 2010, this gang enhanced law became §25850 as a part of the Deadly Weapons Recodification Act of 2010. Through observation, similarities between §25850 and the former §12031 state a simple recodification; the former §12031.e became § 25850.b, authorizing peace officers to search any firearm brought into public to determine if it is loaded. Hence, the mere presence of a firearm allows peace officers to perform warrantless inspections, according to this clause addition. It also says refusal to allow officers to inspect the firearm violates this section.

## The defendant's arrest was a consequence of these firearm restrictions.

The police officers stopped the defendant due to a false allegation. The approach taken by the police officers during the stop and the results of the stop are due to the aforementioned gun laws.

The officers began the interrogation by accusing the defendant of breaking two laws. They then attempted to search the defendant's vehicle without his consent. They proceeded to interrogate the defendant for further information. Their treatment of the defendant after the defendant informed the officers of the firearm within the vehicle is a direct consequence of the gun laws. The interrogation concluded with the decision to find the gun inside the defendant's vehicle at all costs.

The defense assumes the officers interpret Penal Code § 25850 as an excuse to perform unconsented, warrantless searches. The right to inspect the firearm does not give the officers the right to search the vehicle.

## The defense believes the results of the firearm restrictions have led to predominantly minorities suffering the consequences.

As mentioned before, the law prohibiting loaded weapons was ratified to target organized minority groups.

The California Criminal Justice Statistics Center says that in Los Angeles County the following weapons-related felony arrests took place between 2005 and 2014: an average of 2,007.9 black people were arrested per year, an average of 789.4 white people were arrested per year, and an average of 3,781.1 Hispanic people were arrested per year. These numbers both show a similar trend: Hispanic and black people are getting arrested more than white people.

This statistic involves all weapons-related felony arrests. The defense is concerned with all firearm related arrests, either felony or misdemeanor, in California. But, the defense expects to see similar numbers.

## The statute prohibiting loaded weapons within your vehicle is unconstitutional.

In the past 15 years, the Supreme Court has made notable decisions regarding the Second Amendment and its extension upon state law. District of Columbia v. Heller (2008) 554 U.S. 570, 128 S.Ct. 2783 held that

> "… the requirement that any lawful firearm in the home be disassembled or bound by a trigger lock makes it impossible for citizens to use arms for the core lawful purpose of self-defense and is hence unconstitutional."

In McDonald v. Chicago (2010) 561 U.S. 742, the Supreme Court ruled that the right to keep and bear arms extends to individuals in all 50 states. The Court ruled that the Second Amendment was incorporated by the due process section of the Fourteenth Amendment and individuals were therefore granted a constitutional right to keep firearms in their homes for self-protection. This right was greater than the states' power to restrict it.

These recent court cases make it clear any firearm restrictions "in the place where the importance of the lawful defense of self, family, and property is most acute would fail constitutional muster." District of Columbia v. Heller (2008) California gun laws therefore fail constitutional muster according to the Supreme Court.

According to § 25610, firearms must be stored either in the trunk of the car or in a locked container while in vehicular transport. Section § 25850 prohibits carrying a loaded firearm in the vehicle. These two restrictions make any firearm legally within any vehicle inoperable for self-defense purposes. The vehicle is a valuable item of private property holding families in transport. Usually, the vehicle is the second most valuable item in a household and the second most common area where families spend time together. The vehicle is

second to only the home in all these categories. Thus, any firearm restrictions within the vehicle must be accommodating to the driver's defense of self, family, and property.

In no instance would a vehicle operator be able to defend against any threat under the current firearm restrictions. The operator would have to remove the firearm from his trunk or locked container, then proceed to load the weapon. This would put the operator under dire constraints even in foreseen scenarios.

## Penal Code § 25850.b authorizing peace officers to inspect firearms is unconstitutional.

Section § 25850 prohibits carrying a loaded firearm in public. Section § 25850.b states that peace officers can examine any firearm carried by anyone in public, including within a vehicle. Refusal to allow a peace officer to inspect a firearm constitutes probable cause for arrest for violation of this section. After arrest, the officer will have probable cause to search based on the incident of arrest.

The question for firearm inspection by a peace officer thus places the firearm holder at jeopardy. The firearm holder can agree to the inspection; or the firearm holder can disagree to the inspection, be placed under arrest, and then have the firearm inspected based on the search incident to arrest.

The result of the question is rhetorical. The firearm will be inspected by the peace officer whether the question is affirmed or rejected. Since the possible result of this question can place the firearm holder under arrest, the defense contends any firearm holder must be given notice of the Miranda rights and consequences of the question's refusal before inspection requests.

The Miranda rights laws were passed to help suspects against improper interrogation tactics by police officers. These warnings stem from the Fifth

Amendment privilege against self-incrimination and the Sixth Amendment right to counsel.

Under current laws, brief interrogations conducted by police officers do not require the Miranda rights read to suspects. But, under certain circumstances, Miranda rights must be read to suspects. Those circumstances include long detentions, formal arrests, the nature of the questioning, the demeanor of the officers, and the ratio of officers to suspects. Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were "aggressive, confrontational, and/or accusatory," whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. (People v. Aguilera (1996) 51 Cal.App.4th 1151, 59 Cal.Rptr.2d 587.)

The fact the suspect can be arrested due to a response given from the questioning of the officer constitutes Miranda rights obligations. Most people already know the Miranda rights based on previous police encounters and television shows. Yet still, the rights are required to be stated in those circumstances. It is an American due process necessity for a suspect to understand his/her rights when it comes to self-incrimination and counsel. The same conclusions must be made if peace officers are allowed to use rhetorical, incriminating questions. Miranda rights and the laws regarding firearm inspection denials must be read to firearm holders before inspection requests.

The defense feels strongly about this issue. As a Louisiana resident, the defendant was unaware of the consequences of denying an inspection of his firearm in California. Had the defendant been in a time crunch, or had the officers upset the defendant, or had the defendant any reason to deny

inspection, he would have denied the inspection without awareness of the consequences. Fortunately, the defendant did not have a problem with the officers inspecting the gun, since it belongs to him. Once the officers determined there was a need to inspect the gun, the Miranda rights should have been stated and the laws concerning the inspection of firearms, § 25850.b, should have been stated.

**III. Amended Arguments::**

## California Penal Code § 1473.7 Does Apply To This Motion.

The Penal Code § 1473.7 allows a person no longer in custody to file a motion to vacate a conviction or sentence if the conviction or sentence was sought in violation of subdivision § 745(a). If the data sought by the defense indicates the law has been used to target and disproportionately convict/sentence minorities, then the defense desires those cases to be remanded and § 1473.7 shall be used to vacate convictions and sentences.

It is not set in this motion to aid the disclosure of evidence. Rather, it was mentioned as the reason for seeking conviction and sentence information from violations of § 745(a).

## Data Is Not Available For All The Requested Years.

The DA mentioned their office does not possess the capabilities of collecting information from all the years mentioned in the motion (from 1957-2021). The defense would like to formally distinguish the entity that the request was placed upon. The motion was an order requesting the State of California, not the District Attorney's office, to provide the requested information. The defense is confident the State of California may possess the desired information from the years specified, even if the District Attorney's office cannot.

But, if the State of California is not able to obtain the data from those years and can only provide data from a subset of those requested years (ex: 1990-2021), the defense will accept the subset of the data.

## The Requested Information And Data Is Too Broad In Scope.

The defense is certain the information is not too broad in scope and the information is in the hands of the State of California. Why so? Because this information is available to the courts, district attorneys, and police officers in most circumstances. When the court system tries a defendant, DAs and judges have access to the same information currently sought by the defense for each defendant. The court system accesses the information sought by the defense dozens, if not hundreds, of times per day.

When an officer pulls over a California citizen, using his driver's license, he is able to observe through the computer the criminal history of a suspect. Even when the defendant, a Louisiana citizen, was pulled over in California, the officers were able to locate previous arrests out of Louisiana and South Carolina (it is noted the officers were even able to observe expunged arrests as well). The officers also noted the defendant does not have any prior convictions.

Here are the reasons each type of information is sought:

a) Demographic data: This, of course, is needed to discern between race and also finding any other particular patterns in the data.
b) Incident arrest data: The information from the arrest will provide a police report of the encounter and the initial charges
c) Conviction data: The conviction data would be used in conjunction with § 1473.7 to vacate convictions.
d) Sentencing data: The sentencing data would be used in conjunction with § 1473.7 to vacate sentences.

The defense would request that if the request for information could not be granted in its entirety, then approval with respect to each category be mentioned.

## IV. Conclusions::

The demographic, incident, conviction, and sentencing data is accessible to the people in the court system, hence the State of California should be able to produce the requested data (or a subset of the request and subset of the years requested). The defense has worked on database management tasks in various job positions. Rather than copying and providing a plethora of data, the defense proposes to obtain access to the database until all analysis is conducted and finished. If this is not an option, the defense will assist in any way to make sure the data is easily retrievable for the defense. As mentioned, the defense has experts available with experience querying databases and interacting with softwares managing databases. The defense will work alongside the State of California to make sure the defense retrieves the information.

Whether a law is unconstitutional or constitutional definitely depends on the effect and its origin (reason for creation and impact on society). The current firearm restrictions were ratified with racist intentions. The effect has been as the laws intended. The defense is confident the information requested will provide further insights and confirm the defense's suspicions. The defense has the tools necessary to extract conclusions from the data.