Michael Devin Floyd
1901 Iowa Avenue
Kenner, LA 70062
mdf3039@gmail.com
(713)562-7229

Michael Devin Floyd, IN PRO PER

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Michael Devin Floyd<br><br>Plaintiff(s),<br><br>vs.<br><br>San Jose Police Department (SJPD),<br>City of San Jose,<br>City of San Jose City Attorney Office,<br>Officer Joshua White of SJPD,<br>Officer Dakota Peters of SJPD,<br>Sergeant Eugene Ito of SJPD,<br>Officer David Moreno of SJPD,<br>State of California<br><br>Defendant(s). | Case No.: 3:22-cv-00751-WHO<br><br>**Response to State Of California's Motion to Dismiss Plaintiff's First Amended Complaint Along with Memorandum of Points and Authorities in Support Thereof**<br><br>Date: June 8th, 2022<br>Time: 2:00 PM<br>Dept: 2<br>Judge: Hon. William H. Orrick<br>Trial Date: N/A<br>Action Filed: Feb 04, 2022 |

The Plaintiff has crafted this response in opposition to the State of California's Motion to Dismiss Plaintiff's First Amended Complaint, and in support of the Plaintiff's Amended Complaint.

## TABLE OF CONTENTS

**Page**

I. Small inconsistencies……………………………………………………………….………5

A. State of California as Defendant, not Attorney General of the State of California………………………………………………………………5

B. Plaintiff was Forced to Remain in California for Arraignment under Criminal Charges……………………………………………………...5

II. Procedural History……………………………………………………………...…5

III. Opposition to Fed. R. Civ. P. 12(b)(6)....................................................................................6

A. 34 U.S.C. § 12601(a)..................................................................................................8

B. 18 U.S.C. § 242………………………………………………………….…..9

C. 42 U.S.C. § 1981…………………………………………………...…..9

IV. 42 U.S.C. § 1983…………………………………………………………….....9

A. Monell Claims…………………………………………………...…..9

B. 11th Amendment………………………………………………………….....11

C. 2nd Amendment Suits Pending Further Judicial Review.......................................11

V. Opposition to Fed. R. Civ. P. 12(b)(1)..............................................................................12

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal*
*556 U.S. 662, 678 (2009)*..........6,7,8

*Bell v. Atlantic Corp. v. Twombly*
*550 U.S. 544, 556 (2007)*..........7,8

*District of Columbia v. Heller*
*554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)*..........12

*Will v. Michigan Dep't of State Police*
*491 U.S. 58, 70-71 (1989)*..........11

*Iqbal v. Hasty*
*490 F.3d 143, at 179 (2007)*..........6

*McDonald v. City of Chicago*
*561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)*..........12

*Monell v. Dep't of Social Services*
*436 U.S. 658 (1978)*..........10,11

*New York State Rifle & Pistol Association, Inc. v. Bruen (U.S.)*
*No. 20-843*..........12

*Will v. Michigan Dep't of State Police*
*491 U.S. 58, 70-71 (1989)*..........11

*Young v. Hawaii*
*992 F.3d 765, 813 (9th Cir. 2021)*..........12

**STATUTES**

Assembly Bill 1591, Mulford Act..........8

Civil Rights Act..........10

Sherman Act..........7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

United States Code, Title 18
§ 241 ... 9
§ 242 ... 8,9

United States Code, Title 34
§ 12601(a) ... 8,9

United States Code, Title 42
§ 1981 ... 8,9
§ 1983 ... 8,9,10,11,12

California Penal Code
§ 25850 ... 8

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ... 8
Second Amendment ... 8,11
Eleventh Amendment ... 11,12
Fourteenth Amendment ... 11

**COURT RULES**

Federal Rules of Civil Procedure
12(b)(1) ... 12
12(b)(6) ... 6

# I. Small inconsistencies

### A. State of California as Defendant, not Attorney General of the State of California

Throughout the Motion to Dismiss the Plaintiff's First Amended Complaint, the State of California mentions repeatedly the Plaintiff is suing the Attorney General of the State of California. The State of California, in its individual and official capacities, is being sued in the Amended Complaint, not the Attorney General. The Motion to Dismiss repeatedly mentions the Attorney General as the Defendant and draws conclusions about jurisdiction and standing with regards to the Attorney General. (ECF No. 34-1 (MTD-SOC) after page 6.)

### B. Plaintiff was Forced to Remain in California for Arraignment under Criminal Charges

The State of California mentions the Plaintiff was forced to remain in California for two days due to the incident with the San Jose Police Department. (ECF No. 34-1 (MTD-SOC) at 7-11.) This is not correct. Because of the arrest on August 18th and the arraignment on August 20th, 2021, the Plaintiff was forced to remain in the San Francisco Bay Area under the Supervised Own Recognizance program of the Pretrial Services department; he is unable to leave until the conclusion of the criminal proceedings. The Plaintiff has been in California since August 18th, 2021, now almost 9 months, which has caused extreme hardships on the Plaintiff's family.

# II. Procedural History

Plaintiff commenced this action on February 4, 2022, with the filing of the original complaint. (ECF No. 1.) The Court dismissed Plaintiff's complaint with leave to amend to clarify several issues. (ECF No. 10.) Plaintiff filed the operative complaint on March 10, 2022. (ECF No. 14.) The First Amended Complaint named additional defendants, including the Attorney General of California in his official and individual capacity. (Id. at 11; ECF No. 16.) The State of California

filed the Motion to Dismiss Plaintiff's First Amended Complaint on April 28th, 2022. (ECF No. 34 (MTD-SOC))

## III. Opposition to Fed. R. Civ. P. 12(b)(6)

> "Plaintiff's individual capacity cause of action fails to state any viable claim against the Attorney General." (ECF No. 34-1 (MTD-SOC) at 6-15.)

The State of California filed the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), essentially claiming the Plaintiff failed to state a claim upon which relief can be granted. The State of California never mentions the exact claims which relief cannot be granted, so it will be assumed the State of California believes all claims the Plaintiff has stated in the First Amended Complaint cannot be granted relief.

The State of California also quotes and references 2 previous court cases in the section referencing Fed. R. Civ. P. 12(b)(6). In *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*, a Pakistani Muslim man was detained by the federal government shortly after the events which occurred on September 11, 2001. The Pakistani brought action against the several federal officials, claiming they violated constitutional rights. The claims alleged misconduct during his imprisonment at a maximum detainment facility, attempting to place prison guards along with high ranking superiors, such as the Director of FBI and Attorney General of the United States, responsible for the violations of constitutional rights suffered. While finding the claims were enough to supersede the qualified immunity of the prison guards, the courts struggled with determining if conclusions about the superiors' responsibility in the allegations of misconduct could warrant the removal of their qualified immunity. In this instance, the adoption of the detention and investigative policies were in response to "a national and international security emergency unprecedented in the history of the American Republic." *Iqbal v. Hasty, 490 F.3d 143, at 179 (2007)*. Instead of resolving to conclude the policies were adopted to violate constitutional rights of a minority group, the obvious alternative

explanation was since an Arab-Islamic fundamentalist group was believed to be responsible for the attacks, "It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* Thus, qualified immunity will uphold the high ranking superiors were acting within their official capacity duties, and not deliberate indifference to constitutional rights, and those possible violations of constitutional rights in the complaint by the prison guards would not be sufficient to hold the superiors responsible.

In *Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)*, a complaint was filed against telecommunications agencies (ILECs) for parallel conduct unfavorable to competition (CLECs). The complainants allege conspiracy under the *Sherman Act* in two different claims. The complainants allege the ILECs engaged in parallel conduct which inhibited the growth of upstart CLECs. Second, the complaint claimed agreements by the ILECs to refrain from competing against one another. In both of these claims, the complainants do not provide enough factual grounds for the complaint to not be dismissed. The complainants rested their claims on descriptions of parallel conduct, not on any independent allegations of actual agreement among the ILECs. The complaint's general collusion premise fails to answer the point that the individual actions of each ILEC constitutes ordinary competitive marketplace actions. And those actions, to not help competition and to avoid competition, seem ordinary under the presented marketplace conditions.

How does the Plaintiff's Amended Complaint and claims differ from the cases mentioned above? The complainants in *Twombly* did not rest their case on facts, just patterns that could possibly lead to conclusions of conspiracy. Policies attempting to target the perpetrators of 9/11 that disproportionately affected Arabic Muslims could not be deemed acts violating constitutional rights, nor could the high ranking superiors be held responsible in *Ashcroft v. Iqbal*.

What facts and policies are the Plaintiff's claims based on? The Plaintiff attached a motion to the Amended Complaint filed in his defense during the preliminary stages of his trial for the incident that occurred with the San Jose Police Officers. In this motion, he explained the facts and policies found during research. The assemblymen in the State of California passed Assembly Bill 1591 into law in 1967. Also known as the Mulford Act, the purpose of the law was to restrict minorities from assembling with firearms, rights guaranteed to all citizens under the First (peaceful assembly) and Second (bear arms) Amendments to the US Constitution. Part of the Mulford Act is currently California Penal Code 25850. In short, the law allows peace officers, without probable cause, to inspect firearms in public; even more, refusal of inspection constitutes probable cause for arrest.

This is the distinct difference between this complaint and the cases mentioned above. *Twombly* complainants were unable to produce factual evidence, only conclusions drawn from patterns. *Ashcroft v. Iqbal* complainants could not blame legitimate policies in crisis for their adverse effects. Here, the Mulford Act's purpose and effect was to restrict constitutional rights guaranteed to all citizens under the Bill of Rights.

The Plaintiff claims this policy has affected not only him, but all citizens bearing arms under the protection of the Second Amendment to the US Constitution. Thus, through the creation and enforcement of laws in violation of the Second Amendment, the Plaintiff claims the State of California has violated 34 U.S.C. § 12601(a), 18 U.S.C. § 242, and 42 U.S.C. § 1981; along with liability for 42 U.S.C. § 1983 which the complaint is filed under.

**A. 34 U.S.C. § 12601(a)**

The Plaintiff desires, based on the claims in the complaint, the Attorney General of the United States impose civil action to eliminate the practices of constitutional rights violations in California.

Also, the statute does not solely concern the administration of juvenile justice or the incarceration of juveniles. The statute enforces punishment on government agencies "with responsibility for the

administration of juvenile justice or the incarceration of juveniles" for depriving "persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601.

**B. 18 U.S.C. § 242**

A notable 18 U.S.C. § 242 can be attributed to the Rodney King event that took place in California. In this incident of police brutality, two officers were indicted under 18 U.S.C. § 242: the supervising officer and the officer who delivered the most blows.

The constitutional rights that were violated in this case differ from the 1991 King incident because the San Jose Police Department acted in accordance with California firearm laws during the Plaintiff's detainment. The warrantless search was custom under California laws. Not only would the San Jose Police Department officers be held liable, the government entity responsible for the policy be held liable as well. The US Department of Justice must enforce this, along with 18 U.S.C. § 241, by criminal lawsuit.

**C. 42 U.S.C. § 1981**

The State of California alleges 42 U.S.C. § 1981 is only for the enforcement of contracts. (ECF No. 34-1 (MTD-SOC) at 11-9.) This is not the exact wording of 42 U.S.C. § 1981. The text falls under Title 42: The Public Health and Welfare; Chapter 21: Civil Rights; Subchapter: Generally; Section 1981: Equal Rights Under the Law; and Part (a): Statement of Equal Rights. While making and enforcing contracts is defined and established as a right under the Statement of Equal Rights, it is not the sole guarantee under this section. 42 U.S.C. § 1981 also mentions "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings" as rights guaranteed to all persons. 42 U.S.C. § 1981.

## IV. 42 U.S.C. § 1983

**A. Monell Claims**

There have been successful *Monell* claims overriding the immunity of cities, counties, and other government entities, even school boards. *Monell v. Dep't of Social Services, 436 U.S. 658 (1978)*. If a city has a policy or custom that deprived the constitutional rights of citizens, they are liable under *Monell* for the actions of their employees and not immune from federal suit. If a police department has a policy or custom … , they are liable under *Monell* … . If a county has a policy or custom … , they are liable under *Monell* … . If a school board has a policy or custom … , they are liable under *Monell* … . The Defense claims the *Monell* doctrine cannot be used against the State of California. This is not a fact. Here are excerpts from the decision in the *Monell* case:

> "Indeed, municipalities simply cannot 'arrange their affairs' on an assumption that they can violate constitutional rights indefinitely since injunctive suits against local officials under [42 U.S.C.] § 1983 would prohibit any such arrangement." *Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 700, 98 S. Ct. 2018, 2040, 56 L. Ed. 2d 611 (1978)*

The same can be said for the State of California. No governing body can assume violating constitutional rights indefinitely will go unpunished.

> "It is simply beyond doubt that, under the 1871 Congress' view of the law, were [42 U.S.C.] § 1983 liability unconstitutional as to local governments, it would have been equally unconstitutional as to state officers. Yet everyone—proponents and opponents alike—knew [42 U.S.C.] § 1983 would be applied to state officers and nonetheless stated that [42 U.S.C.] § 1983 was constitutional. And, moreover, there can be no doubt that § 1 of the Civil Rights Act was intended to provide a remedy, to be broadly construed, <u>against all forms of official violation of federally protected rights</u>. Therefore, absent a clear statement in the legislative history supporting the conclusion that [Civil Rights Act] § 1 was not to apply to the official acts of a municipal corporation—which simply is not present—there is no justification for excluding municipalities from the 'persons' covered by [Civil Rights Act] § 1." *Monell v.*

*Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 700–01, 98 S. Ct. 2018, 2041, 56 L. Ed. 2d 611 (1978)*

The assertion that the decision in *Monell* dictates 42 U.S.C. § 1983 to solely apply to municipal entities is false. All forms of official violations of federally protected rights are to be remedied. And, when state laws cause violations of constitutional rights across an entire state, that state must be held responsible under 42 U.S.C. § 1983. This is not vicarious liability; *Monell* places a respondeat superior check on government entities' policies and customs; the State of California is responsible for the effects of its laws.

**B. 11th Amendment**

The assertion that the 11th Amendment to the US Constitution grants states complete immunity from federal suit is false. The Defendant cites the 5-4 split decision *Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)*, stating *Monell* is limited to municipalities. Yet, those actions in *Will* were brought against state officials in state court, without a claim of unconstitutionality against a state statute. Section 5 of the 14th Amendment grants Congress "power to enforce, by appropriate legislation," the provisions of the 14th Amendment.

"Suit under § 1983 against state official in her official capacity should be treated as suit against state, and because real party in interest in official-capacity suit is state and not named official, state's 'policy or custom' must have played part in violation of federal law." *Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)*. "State executive officials are not entitled to absolute immunity for their official actions." See supra. The Supreme Court was unanimous in this decision. If the state's policy or custom played part in the violation of federal law, then neither the state nor its officers are entitled to absolute immunity from their official actions.

**C. 2nd Amendment Suits Pending Further Judicial Review**

The pending judicial review of the two cases mentioned by the State of California are about licenses to possess guns, either openly or concealed. *Young v. Hawaii, 992 F.3d 765, 813 (9th Cir. 2021)* is about the inflexible open-carrying firearm licenses in Hawaii. *New York State Rifle & Pistol Association, Inc. v. Bruen (U.S.), No. 20-843* concerns the concealed-carry licenses of New York. The Plaintiff does not believe the outcomes of these cases will affect the outcome of this case. The constitutionality of California firearm laws will be judged consistent with the Supreme Court's decisions in *District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)* and *McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)*.

## V. Opposition to Fed. R. Civ. P. 12(b)(1)

> "The Court lacks subject matter jurisdiction over the damages claims against the Attorney General in his official capacity. Such claims are barred by the Eleventh Amendment because Plaintiff is essentially suing the State of California. Plaintiff has no standing to bring these claims because the Attorney General was not involved in Plaintiff's arrest. The Attorney General is also not a 'person' who can be sued under 42 U.S.C. § 1983." (ECF No. 34-1 (MTD-SOC) at 6-10.)

Basically, the Attorney General of the State of California believes the State of California can be directly responsible for the violations of constitutional rights of US citizens of other states and citizens of other countries, yet remain immune from suit in Federal court.

The California firearm laws in question have allowed peace officers to violate the rights of US citizens for more than half a century.

Instead of seeking immunity, I pray the State of California relinquishes its immunity instead of requiring the Court to decide... and take this responsibility like a "person" in his individual and official capacities.

DATED: May 6, 2022

Michael Devin Floyd